UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KOVAN SADIQ MIZORI,

    Petitioner,

v.

MARY BERGHUIS,

    Respondent.

_____/

Case No. 1:11-cv-455

HON. ROBERT HOLMES BELL

# **OPINION**

This matter is before the Court on Petitioner Kovan Sadiq Mizori's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. United States Magistrate Judge Phillip J. Green issued a report and recommendation (R&R, ECF No. 25) on July 8, 2016, recommending that both the petition and a certificate of appealability be denied. Petitioner has filed objections to the R&R. (ECF No. 26.) For the reasons that follow, the R&R will be approved as modified.

## I.

The Court's analysis of the petition is guided by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A petition for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted by a federal court with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). The purpose of the AEDPA is to "guard against extreme malfunctions in the state criminal justice systems," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and "not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011).

Under the AEDPA, the Court may consider only the "clearly established" holdings of the United States Supreme Court. 28 U.S.C. § 2254(d). "Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme Court] has not announced.'" *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (quoting *Marshall v. Rodgers*, 133 S. Ct. 1446, 1451 (2013)). Moreover, law is not considered "clearly established" if the Supreme Court announces it after the petitioner's last adjudication of the merits in state court. *Greene*, 132 S. Ct. at 44. A state court's decision is "contrary to" clearly established federal law if "the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision involves an "unreasonable application of" clearly established federal law "if the state court correctly identifies the governing legal principle" from a Supreme Court decision, but makes an objectively unreasonable application of that principle to the facts. *Id.*

The Court applies the above standard to "the last state court decision on the merits." *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006).

## II.

Following a jury trial, Petitioner Kovan Sadiq Mizori was found guilty on two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and was sentenced to serve concurrent sentences of 168 to 360 months and 135 to 360 months in prison. The Magistrate Judge has provided a thorough summary of the facts, to which Petitioner has not objected to. (R&R 3-9.) The Court need not repeat those facts here.[1]

Petitioner's conviction was upheld by the Michigan Court of Appeals, *People v. Mizori*, No. 286887, 2010 WL 376797 (Mich. Ct. App. Feb. 2, 2010), and the Michigan Supreme Court denied Petitioner leave to appeal, *People v. Mizori*, 484 Mich. 854 (2010). Following the denial of his direct appeal, he filed a petition for writ of habeas corpus in this Court on May 3, 2011. (Pet., ECF No. 1.) The matter is before the Court on Petitioner's objections to the R&R, which recommended that his petition for writ of habeas corpus be dismissed with prejudice.

## III. Objections

Petitioner has raised 7 objections to the R&R. The Court makes a de novo determination of those portions of an R&R to which specific objections are made. 28 U.S.C.

---

[1] Transcripts of the trial proceedings will be designated as follows:
- May 19, 2008 (ECF No. 11): "Tr. I at __."
- May 20, 2008 (ECF No. 12): "Tr. II at __."
- May 22, 2008 (ECF No. 13): "Tr. III at __."
- May 23, 2008 (ECF No. 14): "Tr. IV at __."

§ 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.*

### A. Failure to Provide Adequate Supplemental Jury Instructions

Plaintiff first contends that he was denied a fair trial after the trial court failed to provide the jury with an adequate supplemental jury instruction on the definition of "intent" to commit murder. During jury deliberations, the jury sent the trial judge a note stating:

Does intent to murder mean:

1. Thought ahead of time or during the incident 'This could/will kill the person & that is my intent'

Or

2. The assailant was aware that their action <u>could</u> cause death & showed deferential regard for?

*Mizori*, 2010 WL 376797, at *6-7. The trial judge responded by providing the jury with a written copy of the jury instructions he had previously given them orally, as well as a tape-recorded copy of the instructions. (Mot. for Review Hr'g Tr. 5-6, ECF No. 16.) Petitioner does not argue that the instruction that was given was incorrect, but rather states that the "trial court was obligated to formulate and give supplemental instructions based on the specific legal question posed by jurors during deliberations." (Objections 2, ECF No. 26.)

> On direct appeal, the Michigan Court of Appeals disagreed, stating:
>
> The trial court must instruct the jury on the law of the case in a clear and understandable manner. *People v. Henry*, 239 Mich. App. 140, 151 (1999). Jury instructions are reviewed as a whole to determine whether the trial court erred. *People v. Canales*, 243 Mich. App. 571, 574 (2000). "Even if somewhat imperfect, [jury] instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *Id.*
>
> Defendant does not argue that the jury instructions provided were incorrect. Instead, he maintains that the jury's request for clarification demonstrates that it did not understand the requisite intent necessary to find defendant guilty of the charged offense and that merely providing the same instruction that had clearly created confusion in the first place constituted error. The jury note does indicate that the jury needed clarification on the issue of intent. The trial court attempted to alleviate this confusion by providing a written copy of the jury instructions. This is a common practice employed by trial courts when juries express confusion over an element of a charged offense.
>
> Moreover, a review of the record reveals that the jury was instructed on the charge of assault with intent to commit murder, as well as the lesser charge of assault with intent to commit great bodily harm. Hearing the instructions for both assault with intent to commit murder and assault with intent to do great bodily harm in close proximity may account for the jury's confusion related to the level of intent. When the trial court provided a written copy of the instruction on assault with intent to commit murder, a written copy of the instruction on assault with intent to inflict great bodily harm was also provided . . . . These two instructions should have been sufficient to clear up any previous misunderstanding on the part of the jury.

*Mizori*, 2010 WL 376797, at *6.

The Court agrees with the R&R's determination that the Michigan Court of Appeals' decision did not result in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Arguing to the contrary, Petitioner cites *Bollenbach v. United States*, 326 U.S. 607 (1946), for the proposition that the trial judge had an affirmative obligation to provide the jury with

5

a supplemental explanation of the intent element. (Objections 2.) But *Bollenbach* is distinguishable. There, the jury informed the trial judge that it was "hopelessly deadlocked." 326 U.S. at 609. They had been stuck in the jury room for seven hours. After a juror asked whether "any act of conspiracy [can] be performed after the crime is committed," the trial judge "made some unresponsive comments but failed to answer the question. No exception was noted immediately." *Id.* 20 minutes later, the jury again asked for further instruction; "the judge 'mistakenly replied,' as the lower court noted, 'that he had already told them that there could be no conspiracy after the object of the conspiracy had been attained.'" *Id.* After an inaccurate supplemental jury instruction, the jury returned five minutes later with a verdict of guilty. *Id.* at 610.

The Supreme Court's holding was narrow: If a trial judge's supplemental jury instruction "is a specific ruling on a vital issue *and* misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge." *Id.* at 612 (emphasis added); *see also Pinckney v. Scribner*, No. CIV-S-05-144, 2009 WL 499081, at *5 (E.D. Cal. Feb. 25, 2009) ("*Bollenbach*, however, was narrowly decided on specific facts: the jury's question had 'clearly indicated that the[y] were confused,' and they received a cursory *and* inaccurate response, along with 'a plain hint from the judge that a verdict ought to be forthcoming.'"); *Tart v. McGann*, 697 F.2d 75, 77 (2d Cir. 1982) (finding that a new trial was necessary because the jury instruction "was 'on a vital issue and misleading'") (citing *Bollenbach*, 326 U.S. at 612).

Because Petitioner has not argued that the jury instruction provided by the trial court was misleading, *Bollenbach* is inapplicable. The case does not, as Petitioner appears to argue, require that a trial judge rephrase an accurate jury instruction. Accordingly, the Michigan Court of Appeals' decision was not contrary to clearly established federal law as determined by the Supreme Court.

Moreover, even if *Bollenbach* did stand for the proposition that Petitioner argues, it states only that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach*, 326 U.S. at 612-13. The Michigan Court of Appeals' determination that the trial judge's actions "should have been sufficient to clear up any previous misunderstanding on the part of the jury" was not an unreasonable application of the facts to the law, because nowhere does *Bollenbach* specify the method in which a trial judge must "clear" up a jury's misunderstanding, and nowhere does the record suggest that the trial judge's actions left the jury unclear. Accordingly, this objection will be denied.

**B. Confrontation Clause**

Petitioner next "objects to the R&R's determination that the admission of certain out-of-court statements did not violate the Confrontation Clause,"[2] and "additionally objects to the R&R's conclusion that 'Petitioner's reliance on *Davis v. Washington*, 547 U.S. 813 (2006), is misplaced.'" (Objections 3.)

---

[2] The initial petition also made a separate hearsay argument, but Petitioner has not raised this as an objection. Accordingly, the Court will address only the Confrontation Clause argument.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has held that the Confrontation Clause bars the "admission of *testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004) (emphasis added). In *Davis*, the Court stated:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicated that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.

The Magistrate Judge identified the following statements that Petitioner argues violate the Confrontation Clause: (1) Raquel Leal's testimony that she had heard from her mother that an individual named "Govan" had hit an older man in the head with a bat, and that she knew petitioner by the name Govan (Tr. III at 563, 567); (2) Detective Seyka's testimony regarding the lack of hesitation on the part of Lisa Leal, Darian Bachman, and Lidia Bachman in identifying the perpetrator from the photo lineup (Tr. III. at 496-97); and (3) Detective Seyka's testimony regarding information he had received from his supervisor concerning the identity of the alleged Eagles club assailant, including that the individual had

a first name of "Kavon" and that he had "some association with the Video 1 video store on Saginaw Street." (Tr. III at 490.)

The statement from Raquel Leal about what she had heard from her mother, Lisa, did not violate the Confrontation Clause because Lisa did testify at trial, and Petitioner therefore had the opportunity to cross-examine her (Tr. III at 534). *See Delaware v. Fensterer*, 474 U.S. 15, 21 (1985) ("[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities through cross-examination."). And even if she was not present for cross-examination, the Court agrees with the R&R that a statement between a mother and a daughter is not testimonial.

Detective Seyka's statement about Lisa Leal's, Darian Bachman's, and Lidia Bachman's lack of hesitancy in identifying the perpetrator also did not violate the Confrontation Clause because all three testified at trial and were subject to cross-examination. *Fensterer,* 474 U.S. at 21. Moreover, as the R&R notes, the statements did not even identify Petitioner as the perpetrator.

The Court agrees with the R&R's analysis of Detective Seyka's supervisor's statement as well. Particularly, the R&R noted that Confrontation Clause claims are subject to a harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). The substance of the complained-of-statement was that Darian Bachman believed the perpetrator was a man named Kavon who had an association with the Video 1 Store. Bachman himself testified at trial that he had picked out Petitioner from a photo lineup without hesitation, and testified to what he saw that night. (Tr. I at 210.) Thus, the statement did not offer any new evidence

9

against Petitioner; rather, as the R&R notes, it was cumulative to Bachman's and other witnesses' identification of Petitioner as the perpetrator and, thus, harmless.

Finding no Confrontation Clause issues, the Court cannot say that the Michigan Court of Appeals' finding of the same was in error. Accordingly, this objection will be denied.

### C. Prosecutorial Misconduct

Third, Petitioner argues that the R&R erred when it determined that the prosecutor's statements during closing argument were improper. The prosecutor stated, "Send a message to him. Tell him our society doesn't tolerate conduct like that. Find him guilty." The Michigan Court of Appeals noted that prosecutors may not urge jurors to convict a defendant as part of their civic duty, but found that, in context, the prosecutor was "properly urg[ing] the jurors to hold defendant accountable for his actions, because the evidence established his guilt of the charged offenses." *Mizori*, 2010 WL 376797, at *4. The R&R noted that "Petitioner has offered nothing to suggest that the state court got this wrong; much less that its decision was objectively unreasonable." (R&R 26.) The Court finds that the same is true of Petitioner's objections. Petitioner has cited no Supreme Court precedent indicating that this decision was either contrary to or an unreasonable application of clearly established law. Moreover, Petitioner does not attempt to distinguish the statement at hand from the R&R's reliance on *Byrd v. Collins*, 209 F.3d 486, 538-39 (6th Cir. 2000), where the Sixth Circuit found that a similar comment did not entitle a petitioner to relief under 28 U.S.C. § 2254. Accordingly, this objection will be denied.

### D. Ineffective Assistance of Counsel

Petitioner also raised four claims of ineffective assistance of counsel before the state court, arguing that his counsel performed deficiently when he failed to object to (1) the trial judge's response to the jury's note asking for clarification; (2) the admission of hearsay testimony; (3) the cross-examination of defense witnesses concerning their failure to previously report exculpatory information to the police; and (4) the prosecutor's closing argument. Petitioner's objections state that "Petitioner's counsel did nothing, apparently hoping that the Court of Appeals would do something. Only when Petitioner raised the issue pursuant [to] appeal was the issue properly presented for appellate review." (Objections 5.)

To make out a claim of ineffective assistance of counsel, Petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced him." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish prejudice, Petitioner must show a reasonable probability that counsel's errors affected the outcome of the proceeding. *Id.* at 696. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* Moreover, on collateral review, relief "may be granted only if the state-court decision unreasonably applied the more general standard for

ineffective-assistance-of-counsel claims established by *Strickland*." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Under this "doubly-deferential" standard, *id.* at 123, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011).

The Court agrees with the R&R that counsel satisfied *Strickland*'s deferential standard. Importantly, the Court agrees with both the Michigan Court of Appeals and the R&R that, due to the "overwhelming evidence of [Petitioner's] guilt," he cannot establish that, had counsel raised the above objections, "the result of his trial proceedings would have been different, or that the trial proceedings were fundamentally unfair or unreliable." *Mizori*, 2010 WL 376797, at *2. Further, the Court agrees with the R&R that there is a reasonable argument that counsel's performance did not fall below an objective standard of reasonableness, because "[a]ny such objection would likely have been futile." (R&R 29.)

**E. Insufficient Evidence**

Next, "Petitioner objects to the conclusion of the R&R that the Michigan Court of Appeals reasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), to find sufficient evidence of assault with intent to murder. (Objections 5.) Petitioner argues that while his actions of hitting victims in the head with a baseball bat "may have been reckless, this does not come close to an intent to kill," as "the facts demonstrate that the two assaults amounted to an intent to scare or an intent to intimidate during an out-of-control melee." (Objections 6.)

The R&R correctly described the "double layer of deference" given to state-court decisions on insufficient evidence claims challenged collaterally. The R&R also noted that, under Michigan law, intent to commit murder may be inferred from circumstantial evidence, and identified the circumstantial evidence presented at trial demonstrating that the state court's conclusion was not unreasonable. (*See* R&R 33.) The Court agrees with the R&R's determination, and Petitioner's conclusory objections do not convince the Court otherwise. Accordingly, this objection will be denied.

### F. Sentencing Guidelines

Petitioner also argued that the state trial judge erred when scoring his sentencing guidelines, and that this error resulted in a due process violation. Petitioner received a 25-point assessment for a life threatening or permanently incapacitating injury under Mich. Comp. Laws § 777.33(1)(c), and argues that there was insufficient evidence that the victims suffered injuries that were life threatening at the time they were inflicted. The Michigan Court of Appeals noted:

> As an initial matter, defendant has provided no citation to authority for his argument that an injury must be "life threatening" at the time it was inflicted in order for 25 points to be assessed under the guidelines. Therefore, this argument is abandoned on appeal. *People v. Kelly*, 231 Mich App. 627, 640-41 (1998). Further, the trial court heard testimony from the neurosurgeon asked to provide a consult for one of the victim's subdural hematoma, which resulted from the blow defendant inflicted to the victim's head, put pressure on the brain and that, if not treated properly such an injury can impair brain function or cause death. This testimony was sufficient to support the trial court's scoring of OV 3 at 25 points. *People v. Hornsby*, 251 Mich. App. 462, 468 (2002).

13

*Mizori*, 2010 WL 376797, at *5. Petitioner also argued that the 25-point assessment for an "unpremeditated intent to kill" under Mich. Comp. Laws § 777.36(1)(b) was improper. Rather, he argued that he should have received only a 10-point assessment for a killing that "is intentional within the definition of second degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent" under Mich. Comp. Laws § 777.36(2)(b). The Michigan Court of Appeals stated:

> [Mich. Comp. Laws §] 777.36(2)(b) applies only when death occurs; plainly, it does not apply here, where neither victim died. Moreover, defendant's argument disregards the statutory requirement that the sentencing judge score OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). The jury found defendant guilty of assault with intent to commit murder. This is a specific intent crime . . . Thus, the jury's verdict necessarily indicates that it determined defendant had the intent to kill. As a result, the trial court was required to assess defendant 25 points for OV 6.

*Mizori*, 2010 WL 376797, at *6.

The Court agrees with the R&R's determination that "it cannot be said that the state court's decision regarding the application of the 'life threatening' injury assessment was based 'upon an unreasonable determination of the facts,'" and that "Petitioner's argument that the trial court in assessing 25 sentencing-guidelines points based on a finding that he had the intent to kill is wholly without merit." (R&R 36, 37.) Because Petitioner has failed to show that the sentence he received was improper, he cannot possibly show that it violated his due process rights. Accordingly, this objection will be denied.

### G. Sixth Amendment Violation

Lastly, Petitioner "objects to the conclusion of the R&R that Petitioner's contention that Michigan's statutory sentencing guidelines violate the Sixth Amendment is demonstrably wrong." (Objections 7.) Petitioner argued that the trial court made factual findings that resulted in an increased mandatory minimum sentence, and that *Alleyne v. United States*, 133 S. Ct. 2151 (2013) prohibited it from doing so. The R&R stated that "[t]his Court is bound by the Sixth Circuit's decision in *Chontos v. Berghuis*[.]" (R&R 37.)

The Court disagrees with the R&R's disposition of this objection. *Chontos* held that "*Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum." 585 F.3d 1000, 1002 (6th Cir. 2009). But *Chontos* was decided four years before *Alleyne*. After *Alleyne*, the Michigan Supreme Court held that "the rule from *Apprendi* . . ., as extended by *Alleyne* . . ., applies to Michigan's sentencing guidelines and renders them constitutionally deficient. That deficiency is the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range." *People v. Lockridge*, 870 N.W.2d 502, 506 (Mich. 2015).

Still, Petitioner is not entitled to relief. Petitioner was convicted in 2008. *Alleyne* was decided after Petitioner was sentenced and after his convictions became final. It was not "clearly established law" under 28 U.S.C. § 2254 because it was not announced until after Petitioner's last adjudication on the merits in state court. *Greene*, 132 S. Ct. at 44. Moreover, the Sixth Circuit has held that "*Alleyne* does not apply retroactively to cases on collateral

review." *In re Mazzio*, 756 F.3d 487, 491 (6th Cir. 2014). Accordingly, even if Petitioner's sentence would today violate the Sixth Amendment under *Alleyne*, he is not entitled to habeas corpus relief. *See Weissert v. Palmer*, No. 1:10-cv-851, 2015 WL 5680149, at *7 (W.D. Mich. Sept. 25, 2015).

### IV. Conclusion

For the reasons stated above, Petitioner's petition for writ of habeas corpus will be dismissed with prejudice. Pursuant to 28 U.S.C. § 2253(c), the Court must also assess whether to issue a certificate of appealability. The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. To warrant a grant of a certificate of appealability, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon review of each claim, the Court determines that reasonable jurists would not find the Court's disposition of Petitioner's claims debatable or wrong. Accordingly, a certificate of appealability will be denied.

An order and judgment will enter in accordance with this opinion.

Dated: <u>August 16, 2016</u>          /s/ Robert Holmes Bell
                                                                                 ROBERT HOLMES BELL
                                                                                 UNITED STATES DISTRICT JUDGE